NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GREGORY F. JOHNSON, | : | **Hon. Dennis M. Cavanaugh** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : | Civil Action No.:08-cv-03780(DMC) |
|  | : |  |
| NBC UNIVERSAL, INC, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Plaintiff Gregory Johnson ("Plaintiff") for an Order remanding this case to state court; and upon motion by Plaintiff for attorney's fees pursuant to 28 U.S.C. §1447(c). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of the Court that Plaintiff's motion to remand is **denied.**

I.   STATEMENT OF THE FACTS

A.   BACKGROUND

From September 12, 2006, to July 16, 2007, Plaintiff worked for Defendant NBC Universal, Inc. ("Defendant") as a Grip on the NBC television program Law & Order - Special Victims Unit ("SVU"). During Plaintiff's tenure with Defendant, his exclusive bargaining representative was the International Alliance of Theatrical and Stage Employees, Local Union 52,("Local 52"). Plaintiff did well at NBC and was promoted to the position of Best Boy within the first two months of his employment. This position came with more responsibility and placed Plaintiff at a stature higher than other Grips. Plaintiff claims that he was wrongfully discharged in breach of Defendant's Policy

Against Harassment ("Policy"). Specifically, Plaintiff alleges that his supervisor fired him in retaliation because he made an internal harassment complaint.

Plaintiff alleges that beginning in November 2006, he was subjected to nearly daily harassment by his supervisor, Paul Volo. On January 29, 2007, in accordance with the Policy, Plaintiff reported this alleged harassment to SVU's Producer and Unit Production Manager, Gail Barringer. Subsequently, Mr. Volo fired Plaintiff. As a result of Mr. Volo's actions Plaintiff claims to have suffered damages, including but not limited to lost wages and benefits, and severe emotional distress.

There are four documents relevant to this matter. A Collective Bargaining Agreement ("CBA") between Local 52 on behalf of its members including Plaintiff and Defendant, two Deal Memorandums ("Deal Memos") and the Policy. The CBA became effective on May 16, 2006, and remains operative until May 15, 2009. It establishes wages, hours, and other terms and conditions of employment for certain employees including Grips. The CBA contains a grievance and arbitration procedure for the resolution of disputes over, among other things, terms and conditions of employment and termination of employment. As parties to the CBA, the Defendant, Local 52 and the Local 52 membership including Plaintiff are bound by its terms. The CBA authorizes NBC employees and Defendant to agree to Deal Memos which are documents signed by an employee that contain certain standard terms for all employees and terms specific to individual employees such as their job title, pay rates, and hours. Defendant asserts that Plaintiff executed a Deal Memo when he began working on the television show SVU on September 11, 2006, and another Deal Memo on April 16, 2007. Defendant alleges that both Deal Memos listed the Policy as an attachment and actually had a copy of the Policy attached.

Plaintiff admits the possibility that the package he was given when he started working for

2

Defendant may have contained both a copy of a Deal Memo and the Policy.  Plaintiff, however, alleges that the Policy was not attached to the Deal Memo, suggesting that the Deal Memo and Policy are separate documents.

Defendant removed this action to federal court on the grounds that Plaintiff's claim is preempted by Section 301 of the Labor Management Act ("LMRA"), 29 U.S.C. §185.

## II.   STANDARD OF REVIEW

In an action removed to federal court under 28 U.S.C. §1441, the removing party bears the burden of showing that there is federal subject matter jurisdiction. See Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004); see also Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). The removal statute is strictly construed against removal and all doubts are to be resolved in favor of remand. See Entrekin v. Fisher Scientific, Inc., 146 F. Supp. 2d 594, 604 (3d Cir. 2001); see also Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992); Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).  Under the "well-pleaded complaint" rule, the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim.  See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1,6 (2003).

For removal to be proper, "'[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one of the plaintiff's cause of action.'" Id. (citing Franchise Tax Bd. Of Cal. v. Construction Laboror's Vacation Trust for S. Cal., 463 U.S. 1, 9-12 (1983)).  Where federal jurisdiction is not present on the face of the complaint, the action may only be removed if it falls within the narrow class of cases to which the doctrine of "complete pre-emption" applies.  Aetna Health, Inc. v. Dabila, 542 U.S. 200, 207-9 (2004).  "'As a corollary of the well-pleaded complaint rule,' complete pre-emption recognizes 'that Congress may so completely

pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" Pascack Valley Hospital v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 300 (3d Cir), cert denied, 546 U.S. 813 (2005) (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987)).  Therefore, even though the claim is pled as a state claim, removal is permissible to federal court because the claim is actually considered to have arisen under federal law that overrides the applicable state law. Franchise Tax Bd. v. Construction Laborers Vaction trust For Southern Cal., 463 U.S. 1, 24 (1983).  Section 301 of the LMRA is an example of when federal law "completely preempts" state law; this federal provision supplants entirely any state cause of action by an employee "for violation of contracts between an employer and a labor organization." Id. at 23.

The United States Supreme Court has developed an expansive preemption doctrine with regard to state law claims involving labor disputes because of the congressional goal of having a unified federal body of labor-contract law.  Allis-Chalmers. Corp. v. Lueck, 471 U.S. 202, 220 (1985).  The Court specifically defined the standard for  removal of a labor contract case by stating that "[w]hen resolution of a state-law claim is substantially dependant upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a §301 claim or dismissed as pre-empted by federal labor-contract law."  Id. (citing Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 559 (1968)).  The Third Circuit has embraced this standard by recognizing that Section 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." Beidleman v. Stoh Brewery Co., 182 F.3d 225, 231-232 (3d Cir. 1999)(quoting Textile Workers Union of Am. v. Lincoln Mills, 353 U.S. 448, 451 (1957)).

In determining whether removal is appropriate, the existence of a collective bargaining agreement is not dispositive. A plaintiff may bring a state law claim that involves a collective

4

bargaining agreement if that claim does not require an interpretation of the collective bargaining agreement.  Kline v. Sec. Guards, Inc., 386 F.3d 246, 255-56 (2004), (citing Trans Penn Wax Corp v. McCandless,  50 F.3d 217, 229 (3d Cir. Pa. 1995)).

## III.    DISCUSSION

Defendant advances two reasons why Plaintiff's motion for remand should be denied. First is that the CBA contains a grievance and arbitration procedure that supercedes the Policy with respect to Local 52 members.  Second is that the Policy was incorporated by reference into the CBA, therefore, to determine if and how the Policy applies, the CBA must be considered and interpreted.

To support his motion for remand, Plaintiff argues that his claim is not preempted because the CBA is an "independent document" which is not implicated here.  Plaintiff argues that the CBA neither references nor encompasses the Policy.  Plaintiff asserts that the Policy applies to all NBC employees including union employees.  In accordance with these beliefs, Plaintiff argues that he was justified in following the procedures set forth in the Policy and reporting the alleged harassment to his supervisor.

Plaintiff also argues that the complaint procedure provided for in the Policy is inconsistent with the grievance procedure set forth in the CBA and that he was entitled to follow the Policy rather than the CBA.  Plaintiff further contends that because no one informed him that he needed to file a grievance with his union or told him that a violation of the Policy was a union matter rather than a corporate matter, he did not have to comply with the CBA.

## A.    THE POLICY AGAINST HARASSMENT AND THE CBA

A separately negotiated employment agreement can be incorporated by reference into a collective bargaining agreement.  A state law claim is preempted when the claim is "substantially dependant" upon the interpretation of a collective bargaining agreement including all incorporated sub-agreements. See Allis-Chalmers Corp., 471 U.S. at 204.  An employment agreement does not have to be physically attached nor specifically contain the words "incorporation by reference" to be incorporated by reference. Levy v. Verizon, 498 F.Supp.2d 586, 595 n.9 (E.D.N.Y. 2007).  Here, the Policy is incorporated by reference into the CBA thus, the Plaintiff's claim is preempted because it is "substantially dependant" upon interpretation of the CBA.

Article 2 of the CBA references and authorizes the formation of Deal Memos, such as those provided to and initialed by Plaintiff.  The Deal Memos clearly provide that the services of union members are subject to the terms of the CBA.  The complete terms of the employment relationship between Defendant and an individual employee are contained in both a Deal Memo and the CBA.  Plaintiff seemingly recognized this fact when he initialed the 2006 and 2007 Deal Memos with the notation "As Per 52" and "As per Local 52" respectively.  In the upper right hand corner of each Deal Memo, Local 52 is designated as Plaintiff's "Local Union."

The Policy is incorporated by reference into the CBA because the Deal Memos specifically reference and incorporate the Policy through a paragraph entitled "Attachments." This section details that the employee has received the Policy and agrees to abide by its terms.

Plaintiff acknowledges that he received the Policy but contends it is an independent document because it was not physically attached.  The plain language of the Deal Memos demonstrates that the Policy was attached.  The Deal Memos provide that an "[e]mployee

6

acknowledges by initialing below that he has received a copy of the Company's Policy Statement and agrees to read, understand, and abide the terms and conditions of employment."

Article 11 of the CBA provides a grievance and arbitration procedure for resolving "all complaints, disputes, or questions as to the interpretation, application, or performance of th[e] Agreement." Plaintiff's allegation that Defendant harassed and retaliated against him in violation of the Policy arguably constitutes a "complaint or dispute" that must be resolved through the grievance and arbitration process. As such, the Court will have to determine whether Plaintiff's claim triggers the arbitration clause contained in the CBA. See Bell Atlantic-Pennsylvania v. Local 13000, 164 F.3d 197, 200 (3d Cir. 1999)("when faced with a dispute involving labor arbitration, a federal court must first determine whether resolution of the disagreement is for the court or for an arbitrator to undertake").

Therefore, the Policy is incorporated by reference into the CBA via the Deal Memos and renders Plaintiff's claim preempted because the claim is "substantially dependant" upon the interpretation of the Policy.

### B.      THE CBA AND POLICY COMPLAINT PROCESSES

Plaintiff argues that because the Policy sets forth an internal complaint procedure for reporting and investigating allegations of harassment and Article 11 of the CBA provides a mechanism for resolving disputes between the Defendant and union members, the Policy and the CBA are in conflict.

Defendant argues that Plaintiff acknowledged the interrelatedness of the CBA, the Deal Memos and the Policy when he initialed the 2006 Deal Memo with "As Per 52" and the 2007 Deal Memo with "As per Local 52." Defendant also argues that the Deal Memos provided to Plaintiff clearly demonstrate that they are subject to the terms of the CBA negotiated by Local

7

52.

Plaintiff was on notice that there was a grievance procedure in the CBA and that his relationship with Defendant is subject to the provisions of the CBA.   As a union member, Plaintiff was required to utilize the CBA's grievance and arbitration procedure when reporting his claim.  As an employee of NBC, Plaintiff was entitled to utilize the Policy and report the claim to NBC's management.  These two methods are not mutually exclusive; a union member can utilize both procedures to facilitate resolution of his or her harassment claim.  Moreover, the Policy as an attachment to the Deal Memos is incorporated into the CBA.  Therefore, even if the grievance procedures were in conflict, for the Court to determine which procedure controlled, the CBA, the relevant Deal Memo and the Policy would all have to be interpreted, and as a result Plaintiff's state law claim is preempted.

### IV.    ATTORNEY'S FEES AND EXPENSES

Plaintiff's motion to remand is denied, thus, there is no need to address the issue of attorney's fees incurred in the removal of the action to federal court.  Plaintiffs motion for attorney's fees and expenses is **denied**.

### V.    CONCLUSION

For the reasons stated, it is the finding of the Court that Plaintiffs' motion to remand and Plaintiff's request for attorney's fees and expenses are **denied**.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh_____
Dennis M. Cavanaugh, U.S.D.J.

Date:           January  22  , 2009
Original:       Clerk's Office
cc:             All Counsel of Record
                Hon. Mark Falk, U.S.M.J.
                File